PODVEY **PM** MEANOR

**Gregory D. Miller**
Director

P: 973-623-6238
F: 973-623-6065
gmiller@podvey.com
Member of NJ and NY Bars

PLEASE REPLY TO NEWARK

## HIGHLY CONFIDENTIAL – FILED UNDER SEAL

November 2, 2011

**_Via ECF and First Class Mail_**

Re:    _TransWeb, LLC v. 3M Innovative Properties Company and 3M Company_
       Civil Action No.: 2:10-cv-04413 (FSH) (PS)
       Our File No. 4519/11574

Honorable Patty Shwartz, U.S.M.J.
United States District Court
Frank R. Lautenberg U.S. P.O. & Cthse. Building
Room 477
Newark, NJ 07101

Dear Judge Shwartz:

        This firm, together with the law firm of Fish and Richardson, P.C., serves as co-counsel to defendants 3M Innovative Properties Company and 3M Company ("3M") in the above-referenced matter.  Pursuant to Local Civ. R. 37.1, we seek the Court's intervention to resolve disputes regarding Plaintiff TransWeb's responses to certain document requests served by 3M.

        Because these requests arose in the last week of discovery and after the August 13, 2011, deadline for the parties to submit disputes via the joint letter protocol, counsel contacted chambers on October 13 to request the Court's guidance in how to proceed.  The Court informed 3M that 3M had permission to bring this letter, so long as the parties agreed on an expedited timeline for its submission.  The parties have subsequently met and conferred to narrow the issues requiring the Court's intervention.  As such, in accordance with the Court's guidelines, the parties submit this joint letter setting forth the dispute.

**(a)    The Requests and the Responses.**

        The following document requests, together with TransWeb's responses thereto, are at issue in this motion:

        **REQUEST FOR PRODUCTION NO. 106:**  All documents that refer or relate to Clarcor's purchase of TransWeb.

**Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C. | Counsellors at Law**

One Riverfront Plaza, Newark, NJ 07102 | P: 973-623-1000 | F: 973-623-9131
570 Lexington Avenue, New York, NY 10022 | P: 212-432-7419
**www.podvey.com**

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 2

*HIGHLY CONFIDENTIAL*
*- FILED UNDER SEAL*

**TRANSWEB'S INITIAL RESPONSE TO REQUEST FOR PRODUCTION NO. 106:** TransWeb incorporates by reference its General Objections and Objections to Definitions as though fully set forth herein.

TransWeb further objects to this Request on the grounds that it seeks to impose obligations on TransWeb exceeding those authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of New Jersey, or any order of the Court, or is otherwise beyond the scope of permissible discovery in this action.

TransWeb further objects to this Request on the grounds that it seeks information that is neither relevant to any claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

TransWeb further objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive, and redundant.

TransWeb further objects to this Request on the grounds that it is premature because 3M has moved to bifurcate and stay the antitrust claims. Until the Court rules on 3M's motion, TransWeb does not intend to further respond to this Request.

**TRANSWEB'S AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 106:** TransWeb incorporates by reference its General Objections and Objections to Definitions as though fully set forth herein.

TransWeb further objects to this Request on the grounds that it seeks to impose obligations on TransWeb exceeding those authorized by the Federal Rules of Civil Procedure, the Local Rules of the District of New Jersey, or any order of the Court, or is otherwise beyond the scope of permissible discovery in this action.

TransWeb further objects to this Request on the grounds that it seeks information that is neither relevant to any claims or defenses in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

TransWeb further objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive, and redundant.

**TRANSWEB'S AUGUST 8, 2011 LETTER REGARDING REQUEST FOR PRODUCTION NO. 106:** With respect to 3M's Request for Production Nos. 105-106, as previously stated TransWeb has already provided 3M with a copy of Clarcor's 10-K for its 2010 fiscal year, which sufficiently describes Clarcor's acquisition of TransWeb. TransWeb will also produce, at a mutually agreeable time and place, all relevant, non-privileged documents that refer or relate to TransWeb's contention that 3M's anticompetitive actions forced a premature and unwanted sale of TransWeb to

Honorable Patty Shwartz, U.S.M.J.                              **HIGHLY CONFIDENTIAL**
November 2, 2011                                              **- FILED UNDER SEAL**
Page 3

Clarcor, if any, in TransWeb's possession, custody or control following a reasonable and diligent search. To the extent that 3M seeks additional documents, the Requests seek non-relevant documents and are overly broad, unduly burdensome, and oppressive. 3M has failed to provide any support for the contention that documents related to TransWeb's ability to pay any damage award or Clarcor's potential for such liability are relevant to any issue in this case.[1]

**REQUEST FOR PRODUCTION NO. 111:** All documents that refer to, relate to, support, or contradict TransWeb's contention that enforcement of the '458 patent and the '551 patent "forced a premature and unwanted sale of TransWeb to CLARCOR Inc. at a depressed 'fire sale' price because of TransWeb's inability to bear the costs and other burdens that the litigation imposed." (Doc. No. 58 at 32.)

**TRANSWEB'S INITIAL RESPONSE TO REQUEST FOR PRODUCTION NO. 111:** TransWeb incorporates by reference its General Objections and Objections to Definitions as though fully set forth herein.

TransWeb further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity, including but not limited to the common interest or joint defense privileges.

TransWeb further objects to this Request on the grounds that it seeks information regarding TransWeb's contentions, or otherwise seeks to require TransWeb to identify all information concerning a particular topic or issue.

TransWeb further objects to this Request on the grounds that it is premature because 3M has moved to bifurcate and stay the antitrust claims. Until the Court rules on 3M's motion, TransWeb does not intend to further respond to this Request.

**TRANSWEB'S AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 111:** TransWeb incorporates by reference its General Objections and Objections to Definitions as though fully set forth herein.

---

[1] In subsequent communications between the parties on August 12, 2011, TransWeb agreed to produce the purchase agreement; non-privileged documents that expressly discuss terms or potential terms of the purchase agreement; non-privileged documents that relate to the negotiation of the terms or potential terms of the purchase agreement; non-privileged documents that refer or relate to the valuation of the '871 patent; and non-privileged documents responsive to the Request that refer or relate to this lawsuit.

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 4

*HIGHLY CONFIDENTIAL*
*- FILED UNDER SEAL*

TransWeb further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity, including but not limited to the common interest or joint defense privileges.

TransWeb further objects to this Request on the grounds that it seeks information regarding TransWeb's contentions, or otherwise seeks to require TransWeb to identify all information concerning a particular topic or issue.

Subject to the foregoing objections, TransWeb will produce, at a mutually agreeable time and place, relevant, non-privileged documents sufficient to show that enforcement of the '458 patent and the '551 patent "forced a premature and unwanted sale of TransWeb to CLARCOR Inc. at a depressed "fire sale" price because of TransWeb's inability to bear the costs and other burdens that the litigation imposed," if any, in TransWeb's possession, custody or control following a reasonable and diligent search.

**TRANSWEB'S AUGUST 7, 2011 LETTER REGARDING REQUEST FOR PRODUCTION NO. 111:** With respect to 3M's Request for Production No. 111, TransWeb will produce, at a mutually agreeable time and place, all relevant, non-privileged documents responsive to this Request, if any, in TransWeb's possession, custody or control following a reasonable and diligent search.

**(b)    3M's Statement of the Parties' Efforts to Resolve the Dispute.**

3M took the depositions of Richard Granville (TransWeb's principal owner) and Richard Wolfson (Clarcor and TransWeb's in-house attorney) on October 7, 2011. Their testimony made clear that TransWeb had not produced relevant documents in TransWeb's possession that were responsive to 3M's cited requests, which had been outstanding for months. During Mr. Granville and Mr. Wolfson's depositions, 3M put its objections to TransWeb's failure to provide the relevant documents on the record and told TransWeb it would follow up regarding them.

3M again brought these issues to TransWeb's attention via letter on October 12, 2011, and requested an immediate meet and confer given the October 14 close of fact discovery. TransWeb responded on October 13, 2011, and told 3M that "Since we received these only yesterday, we can't provide you with a formal, comprehensive response by today as you have demanded. We will do our best to respond to these issues tomorrow." After receiving TransWeb's response on October 13, 3M contacted the Court to seek its guidance on how to handle the issue, and received approval to file a joint letter by the middle of the week of October 17. 3M told TransWeb of the schedule immediately after speaking with the Court on October 13, and told TransWeb "In the hopes of narrowing the issues put before Judge Shwartz, we continue to be available to meet and confer on any and all issues raised by either of yesterday's letters, but we would need to do so in time to accurately capture TransWeb's positions (and our responses to those positions) in tomorrow's submission."

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 5

**HIGHLY CONFIDENTIAL**
**- FILED UNDER SEAL**

TransWeb stated that it was not available to meet and confer prior to Monday, October 17. TransWeb also told 3M that it had contacted the Court regarding the schedule for submitting this letter, and that the Court was amenable to the parties taking additional time to meet and confer, so long as the process was as expeditious as possible.

The parties met and conferred telephonically on October 17. At that time, TransWeb agreed to provide documents and information in response to some of 3M's requests. On October 18, TransWeb informed 3M that TransWeb had notified the Court that it would produce additional documents on Friday, October 21; that at least two of 3M's issues would not be resolved by the production; and that the parties would submit the unresolved issues by joint letter the following week.

After reviewing TransWeb's October 21 production, 3M informed TransWeb on Monday, October 24, that it would narrow the issues raised before the Court to the two topics for which the parties were at an impasse.

**(c)     TransWeb's Statement of the Parties' Efforts to Resolve the Dispute.**

On October 12, 2011, attorneys for 3M sent two letters to TransWeb's counsel, collectively raising no less than twelve discovery issues on which it sought to meet and confer prior to the October 14 close of discovery. On Monday, October 17, 2011, counsel for 3M and TransWeb met and conferred telephonically for approximately one hour. Without explanation, 3M abandoned six of the demands for additional discovery it had raised in its written correspondence and that TransWeb had accordingly researched. During the telephonic conference, TransWeb agreed to produce additional information or documents by October 21, 2011 that it believed (correctly) would resolve four of 3M's remaining disputes.

The two remaining disputes relate to documents "in Mr. Wolfson's files." Notably, these requests originated as specific requests for discrete categories of documents during Mr. Wolfson's deposition, including cash flow analyses and documents about business synergies. 3M's Notice of Deposition for Mr. Wolfson did not include a request for documents. Nor did 3M ever seek to subpoena documents from Clarcor. Nevertheless, during the meet and confer process, 3M sought to expand these specific requests raised for the first time at deposition into requests for all discoverable documents in Mr. Wolfson's files. 3M offered to abandon these requests only if TransWeb would agree not to call Mr. Wolfson as a witness at trial. TransWeb declined.

TransWeb agrees with 3M that the parties remain at an impasse regarding these remaining two topics.

**(d)     Why the Information is Relevant and Why TransWeb's Response Continues to be Deficient.**

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 6

**HIGHLY CONFIDENTIAL**
**- FILED UNDER SEAL**

**(1)** **TransWeb Should be Ordered to Produce All Responsive, Non-Privileged Documents from its General Counsel Richard Wolfson's Files.**

The assets of TransWeb were purchased by Clarcor Filtration Products in a deal that closed on December 30, 2010. TransWeb's current general counsel, Richard Wolfson, also served as counsel for Clarcor Filtration Products, and did so prior to the acquisition. But Mr. Wolfson testified that he began serving as an attorney for TransWeb as of June 16, 2010, the date that Clarcor and TransWeb signed a joint defense agreement:

> Q. At some point did Clarcor enter into a joint defense agreement with TransWeb related to this lawsuit?
> A. Yes we did.
>
> Q. Do you know what the effective date of that agreement is?
> A. I know when the agreement was executed. I would have to go back and look at the agreement to know if there was an effective date that was different from that agreement. But the execution date as I recall was June 16, 2010.
>
> Q. To the extent that you had an attorney-client relationship with TransWeb it would be specified by the terms of that joint defense agreement?
> A. I believe so. I don't know.

As such, TransWeb has taken the position that Mr. Wolfson was acting as TransWeb's attorney at least as early as June 16, 2010. While 3M may take issue with that characterization (TransWeb has claimed privilege over the contents of the joint defense agreement itself, so 3M cannot test it until privilege logs are exchanged), if Mr. Wolfson was indeed TransWeb's lawyer as of June 16, 2010, TransWeb at least needs to produce responsive, non-privileged documents from Mr. Wolfson's files. To date, 3M does not believe that TransWeb has produced any of Mr. Wolfson's documents. TransWeb's counsel confirmed during the parties' meet and confer that it did not believe that it had an obligation to produce Mr. Wolfson's files because Mr. Wolfson was employed by Clarcor.

If Mr. Wolfson was acting as TransWeb's lawyer, his documents should be produced by TransWeb as a party to this litigation. In its requests for production, 3M expressly stated that its requests applied to "any and/or all documents and things in the possession, custody, or control of Plaintiff or in the possession, custody, or control of any Plaintiff's attorneys, accountants, bankers, brokers, employees, agents, subsidiaries, affiliates, and representatives" (emphasis added). What is more, a party needs to produce documents over which it had possession, custody, or control. Fed. R. Civ. P. 34(a); see also, e.g., Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441-42 (D.N.J. 1991).

Honorable Patty Shwartz, U.S.M.J.                    **HIGHLY CONFIDENTIAL**
November 2, 2011                                      **- FILED UNDER SEAL**
Page 7

        This Court has made it clear that documents in the possession of a parent corporation
are also within the possession of its subsidiary if "the intracorporate relationship establishes
some legal right, authority or ability to obtain the requested documents on demand." *Camden
Iron & Metal*, 138 F.R.D. at 442-44 (emphasis in original; compelling production of documents
from a party's foreign parent because the subsidiary "possesses the ability to obtain such
documents from [its parent] for its usual business needs. One such business need is to provide
highly relevant documents in litigation."). This Court has expressly held that a subsidiary has
such control over the files of an employee of the parent corporation if the subsidiary may call
the employee to testify on its behalf. For example, in *Solvay Solexis, Inc. v. 3M Company*, Civ. No.
04-6162 (FSH-PS), slip op. at 6 & n.10 (D.N.J. Feb. 22, 2006) (attached), this Court ordered
production of relevant materials from the files of employees of the plaintiff's foreign parent
because:

> It appears that the subsidiary has control over at least some aspects of the
> foreign [parent] corporation and it is obliged to produce certain records.  ...
> The record shows that the **plaintiff has had the ability to easily obtain**
> **support from the parent to pursue this litigation when it sees fit**. For
> instance, the Court has already found that [one of the employees ordered to
> produce documents] has played a critical role in preparing witnesses to testify at
> depositions in this case. As the Court has already found that the plaintiff has
> control over [the parent's employee] to produce him for a deposition, and it is
> clear that plaintiff can obtain the documents in his files that are related to the
> patent in suit or the accused product.

(citing *Camden Iron & Metal*; emphasis added).

        There is no question that TransWeb has full access to Mr. Wolfson's knowledge and
files when doing so suits its purposes in this litigation. Mr. Wolfson is TransWeb's general
counsel as well as Clarcor's. He has attended the settlement conference in this case as an
attorney for TransWeb. He has participated in the preparation of and attended the depositions
of several TransWeb witnesses, including Mr. Granville (TransWeb's former principal owner)
and Mr. Ogale (TransWeb's CEO and the inventor of its asserted patent). TransWeb had no
difficulty making Mr. Wolfson available for his deposition. Nor can TransWeb's counsel argue
that they cannot obtain Mr. Wolfson's documents, which he testified are already subject to a
litigation hold in this case. Moreover, TransWeb has made it clear that it intends to rely at trial
on Mr. Wolfson's information concerning the value Clarcor placed on TransWeb. TransWeb's
antitrust claim relies on the assertion that Clarcor purchased it at a "fire sale" price as a result
of this litigation. In order to prove that claim, TransWeb will need to put on evidence of the
alleged price that Clarcor would have been willing to pay. TransWeb effectively confirmed this
during the parties' meet and confer, when it refused to say that it would not call Mr. Wolfson
as a trial witness.

        TransWeb argues that Mr. Wolfson's files are outside 3M's document requests, because
he somehow was not "representing" TransWeb prior to its acquisition, even though he

Honorable Patty Shwartz, U.S.M.J.   **HIGHLY CONFIDENTIAL**
November 2, 2011   **- FILED UNDER SEAL**
Page 8

allegedly had an attorney-client relationship with it.  Even if such status existed, it would be irrelevant, because TransWeb in fact has access to Mr. Wolfson's files, as discussed above, and because Mr. Wolfson is *presently* both TransWeb's attorney and one of its officers.  Moreover, there is no such thing as a "non-representing" attorney who has an attorney-client relationship with a party who is not his client.  TransWeb cannot have it both ways.  Either Mr. Wolfson was its attorney as a result of the (still undisclosed) June 16, 2010, agreement, or he was not.  If TransWeb is now conceding that the agreement did not create an attorney-client relationship between it and Mr. Wolfson, TransWeb must be held to that position for purposes of determining privilege.   Regardless, TransWeb cannot rely on alleged ambiguities in the definition of its relationship with Mr. Wolfson to reinterpret the scope of 3M's document requests.

TransWeb's actions prove that it can obtain Clarcor's and Mr. Wolfson's assistance in this litigation whenever doing so is in its interest.  TransWeb has also made it clear that it intends to rely on Mr. Wolfson's access to Clarcor's alleged valuation of TransWeb to support its antitrust claims.  Accordingly, TransWeb should be ordered to produce the non-privileged files from Mr. Wolfson immediately, and to log any privileged documents in his files.

> **(2)   To the Extent that TransWeb Proffers Testimony on a Supposed Higher Asking Price from Clarcor, TransWeb Should Produce All Documents Reflecting or Contradicting that Higher Asking Price.**

TransWeb has contended that 3M's assertion of its patents "forced a premature and unwanted sale of TransWeb to CLARCOR Inc. at a depressed 'fire sale' price because of TransWeb's inability to bear the costs and other burdens that the litigation imposed." (TransWeb's Second Amended Complaint, paragraph 114.) When asked at his deposition what Clarcor would have paid for TransWeb absent this litigation, Mr. Wolfson provided the following testimony:

> Q.  What would Clarcor have paid for TransWeb in the absence of that intellectual property dispute?
> A.  I believe Clarcor would have paid in the neighborhood of ███████████ dollars for this company.
> Q.  What is the basis of that understanding?
> A.  The ██████████ – I believe that the ████████████████████ ███████ for a company of TransWeb's ██████ – a company with the kind of ██████████ that TransWeb had I believe the ████████████████████
> ████████████████████████████████████████████████████
> That's absent any ████████████████████████████████████ This company was ████████████████████████████████████████
> it might have been to ████████████████.
> Q.  To the best of your knowledge, were there any documents that were generated reflecting the fact that Clarcor would have paid somewhere in the neighborhood of ██████████ in the absence of the litigation?

**HIGHLY CONFIDENTIAL
- FILED UNDER SEAL**

A. I do not know.

To the extent that Mr. Wolfson is contending that Clarcor would have paid ▮▮▮▮▮
for TransWeb, TransWeb should produce all documents (both from Mr. Wolfson's files and
elsewhere) reflecting Clarcor's valuation of TransWeb, either at the ▮▮▮▮▮▮▮
number or otherwise. Moreover, to the extent that TransWeb wishes to rely on this
testimony to support its antitrust allegations, TransWeb should not be allowed to at the same
time claim privilege over valuation documents. "It is well established that the attorney-client
privilege cannot be used as a proverbial sword and shield – to waive when it benefits the client
and wield when it does not." *See, e.g., Hoffman La-Roche, Inc. v. Roxane Laboratories*, 2011 WL
1792791 at *10 (D.N.J. May 11. 2011) (citations omitted). As Magistrate Judge Falk noted in the
*Hoffman La-Roche* case:

> Fundamental fairness requires that Mr. Silverman not be permitted to offer
> unchecked testimony on such allegedly privileged issues, while at the same
> time Roche fights to keep written communications on the same issues
> private. To do so would prevent Roxane from effectively responding to
> assertions or implications about the substance of privileged communications,
> and would have the result of presenting only Roche's side of the story. To
> effectively even the playing field, Roxane should have the opportunity to
> examine the Disputed Documents.

*Id.* at *11.

The same is true here – TransWeb and Mr. Wolfson should not be allowed to argue to
the jury that Clarcor would have paid more for it if 3M is not allowed to examine the
underlying documents that either support or contradict that point. TransWeb asserts that it is
not using the attorney-client privilege as both a sword and a shield, because Mr. Wolfson's
knowledge of Clarcor's alleged valuation of TransWeb is non-privileged "business" information.
3M has no dispute with that characterization, so long as (1) TransWeb produces the alleged
"business" documents; and (2) TransWeb is not asserting privilege over the alleged "business"
documents that support or contradict Mr. Wolfson's proffered testimony. Based on its refusal
to produce the documents in question, however, 3M anticipates that TransWeb is attempting
to claim privilege over the documents that would allow 3M to effectively cross-examine Mr.
Wolfson. That is precisely the kind of abuse that the sword/shield doctrine is intended to
prevent.

TransWeb cannot skirt the rules governing waiver of privilege by asserting that Mr.
Wolfson's knowledge itself is not privileged, but that the documents related to the same
knowledge somehow are.[2] TransWeb has injected the issue of Clarcor's valuation of it into this

---

[2] 3M anticipates that TransWeb may argue that 3M agreed Mr. Wolfson's deposition testimony
would not itself constitute a waiver of privilege. 3M's agreement was limited to Mr. Wolfson's

Honorable Patty Shwartz, U.S.M.J.　　　　　**HIGHLY CONFIDENTIAL**
November 2, 2011　　　　　　　　　　　　**- FILED UNDER SEAL**
Page 10

litigation.  As such, TransWeb should produce any documents reflecting Clarcor's valuation of TransWeb, including documents that are in Mr. Wolfson's possession, custody or control.

### (e)　　Why TransWeb Believes 3M's Arguments Lack Merit

3M's joint discovery letter is a makeshift attempt to obtain discovery from corporate entities it never subpoenaed, Clarcor Filtration Products, Inc. (a holding company that acquired the equity of TransWeb) and CLARCOR Inc. (the ultimate parent company of the Clarcor group) (collectively, "Clarcor").  3M has known since January 2011 that Clarcor acquired TransWeb in the middle of this litigation.  It has known since April 2011, when TransWeb served its proposed Second Amended Complaint, that TransWeb alleged it was sold at a depressed "fire sale" price.  Yet 3M never subpoenaed Clarcor, nor did it request that Mr. Wolfson produce any documents from his files at his deposition.

At deposition one week before the discovery cutoff, however, 3M learned from Mr. Wolfson's testimony that Clarcor would have paid as much as ▮▮▮▮▮▮ for TransWeb absent 3M's patent litigation against it.  Only at that point, despite its knowledge of TransWeb's allegation that it was sold at a depressed "fire sale" price to Clarcor, did 3M apparently become interested in Clarcor's documents.  At that time, however, fact discovery was closing and 3M had insufficient time to subpoena those documents from Clarcor, and it did not seek relief from the fact discovery cut-off to do so.

Now, having realized it may have overlooked an avenue of non-party discovery, 3M seeks the Court's assistance after the close of fact discovery to cure its own failure to subpoena documents from Clarcor.  Specifically, it seeks to compel production of two categories of documents that relate to Clarcor's acquisition of TransWeb, not from TransWeb itself, but from "Mr. Wolfson's files" in his capacity as a Clarcor officer.  For the reasons below, 3M's attempt should fail.

### (1)　　Mr. Wolfson Was Never TransWeb's "Attorney" Prior to the Acquisition

3M erroneously contends that Richard Wolfson was representing TransWeb prior to the acquisition by Clarcor and therefore he should be required to produce responsive documents to RFP 106 (seeking "[a]ll documents that refer or relate to Clarcor's purchase of TransWeb") and RFP 111 (seeking "[a]ll documents that refer to, relate to, support, or contradict TransWeb's contention that enforcement of the '458 patent and the '551 patent

---

responses to *3M's* questions, provided in the deposition context.  If TransWeb intends to affirmatively introduce or rely on evidence of Mr. Wolfson's knowledge for its own purposes in this litigation, doing so would waive privilege regarding any related information or documents in Mr. Wolfson's possession.

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 11

**HIGHLY CONFIDENTIAL**
**- FILED UNDER SEAL**

"forced a premature and unwanted sale of TransWeb to CLARCOR Inc. at a depressed 'fire sale' price because of TransWeb's inability to bear the costs and other burdens that the litigation imposed"). 3M's argument fails for multiple reasons:

First, contrary to 3M's assertion, Mr. Wolfson was <u>not</u> representing TransWeb prior to its acquisition by Clarcor, as he made clear in a portion of his deposition testimony that 3M fails to provide to the Court above:

> Q.   Did you in your capacity as an attorney at any point prior to the consummation of the merger between Clarcor and TransWeb represent TransWeb?
> A.   Represent TransWeb?  I will have to say represent them as a client, no I did not.  I would have to say that I was always representing Clarcor as its attorney and as a businessperson in connection with some aspects of the acquisition.

Wolfson Tr. at 19:23-20:7.  Mr. Wolfson was not representing both sides of the same transaction.  Until the acquisition closed, he represented only Clarcor; after it closed, he represented both Clarcor and TransWeb.  Because Mr. Wolfson was not an attorney for TransWeb prior to the acquisition closing, 3M's only asserted basis for seeking his files from TransWeb fails.  See 3M's argument above ("If Mr. Wolfson was acting as TransWeb's lawyer, his documents should be produced by TransWeb as a party to this litigation.")[3]

Moreover, 3M mischaracterizes the basis for TransWeb asserting privilege over certain pre-acquisition communications on which Mr. Wolfson was included.  3M suggests that TransWeb is asserting privilege based on Mr. Wolfson's purported representation of TransWeb prior to the acquisition.  That is incorrect.  The basis for TransWeb's assertion of privilege over pre-acquisition documents is the parties' Joint Defense and Community of Interest Agreement between Clarcor and TransWeb with respect to 3M's patent litigation against TransWeb, and not an attorney-client relationship between Mr. Wolfson and TransWeb, as 3M suggests.  To the extent 3M seeks to challenge the assertion of privilege over certain documents related to the acquisition, the Court has already set up a schedule and process for addressing that issue, see Order on Informal Application, Docket No. 194 (Oct. 7, 2011), and 3M should not be permitted to end run that process by seeking production from TransWeb of all responsive documents in Mr. Wolfson's files.  To the extent there were pre-

---

[3]  Although 3M is now arguing that Mr. Wolfson was representing TransWeb prior to the acquisition, 3M recently argued the exact opposite to this Court in the last telephonic status conference.  During that hearing, 3M argued that Mr. Wolfson was a third party vis-à-vis TransWeb prior to the acquisition.  See, e.g., Tr., Docket No. 193 at 44-45.  3M should not be permitted to advance wholly inconsistent positions before this Court to suit its interest at any given moment.

Honorable Patty Shwartz, U.S.M.J.
November 2, 2011
Page 12

*HIGHLY CONFIDENTIAL*
*- FILED UNDER SEAL*

acquisition communications exchanged between Mr. Wolfson and TransWeb, 3M will have the opportunity to challenge the assertion of privilege over those documents, and if successful obtain production of those documents in the process previously established by this Court.

The privilege issues that will be briefed in the coming weeks—whether styled as a joint defense, common interest, or joint client privilege—are simply exceptions to the rule that the presence of a third party waives the attorney-client privilege.[4]   They do not convert a non-client into a client, *i.e.*, they do not make TransWeb Mr. Wolfson's client prior to the date Clarcor acquired TransWeb. *See, e.g., Graco, Inc. v. PMC Global, Inc.*, No. 08–1304 (FLW), 2011 WL 666048, at *20 (D.N.J. Feb. 14, 2011) (Arpert, J.) ("'[T]he fact that ... parties [may be] on adverse sides of a business deal ... does not compel the conclusion that the parties did not share a common legal interest,' such as when the parties may face 'the possibility of joint litigation in which they would share a common interest.' '[T]he weight of case law suggests that ... privileged information exchanged during a merger between two unaffiliated businesses would fall within the common-interest doctrine.'") (internal citations omitted).[5]   Because the applicability of the joint defense or common interest privilege is the subject of future briefing related to the parties' privilege logs, TransWeb does not intend to address it further in this joint letter.  Nevertheless, it is necessary to point out that 3M misunderstands or misconstrues the nature of the privilege asserted over these pre-acquisition communications in an effort to compel the production of the documents in response to the two Requests for Production at issue here.

Second, as counsel for Clarcor—not TransWeb—prior to the closing of the acquisition, Mr. Wolfson was *not* TransWeb's agent or attorney, and any pre-acquisition documents in his files relating to Clarcor's purchase of TransWeb and documents related to the price Clarcor paid for TransWeb are in his files as *Clarcor*'s attorney and agent, not as TransWeb's.  Any *post-*

---

[4]   Although 3M complains that TransWeb has not produced its joint defense agreement with Clarcor, TransWeb's privilege assertion over this document was justified.  *See, e.g., Warren Distrib. Co. v. InBEV USA L.L.C.*, No. 07-1053 (RBK), 2008 WL 4371763, at *3-4 (D.N.J. Sept. 18, 2008) (joint defense agreement not discoverable where existence of such already disclosed).

[5]   *See also id.* at *21 ("'When co-clients and their common attorneys communicate with one another, those communications are in confidence for privilege purposes ... [and] the privilege protects those communications from compelled disclosure to persons outside the joint representation.'  Importantly, "if two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that relates to matters of common interest is privileged as against third persons.'  This is to say that 'because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, their legal interests must be identical ... in order that an attorney can represent them with all the candor, vigor, and loyalty that our ethics require.'") (internal citations omitted).

*HIGHLY CONFIDENTIAL*
*- FILED UNDER SEAL*

acquisition documents that would be responsive to either of the asserted categories would be privileged since he was acting as the General Counsel of TransWeb following the acquisition.

In short, prior to the acquisition, Mr. Wolfson was not representing TransWeb; he was not an officer or employee of TransWeb; and his pre-acquisition files were not accessible to TransWeb. As such, a document request directed to TransWeb simply does not extend into the General Counsel's files of a separate corporate entity. Post acquisition, Mr. Wolfson was acting as TransWeb's General Counsel and such communications and documents would be privileged. Pre- and post-acquisition, Clarcor has remained a separate corporate entity from TransWeb and any documents 3M wanted from Clarcor should have been sought by way of a subpoena served on Clarcor.

This is not simply a technicality that can or should be disregarded by granting 3M's requested relief. Mr. Wolfson serves as General Counsel for more than 20 separate companies owned by CLARCOR Inc.[6]  Under 3M's logic, a document request directed to TransWeb would require Mr. Wolfson to search the files that he maintains for each of these separate corporate entities -- some of which compete with 3M in the filtration business -- simply because Mr. Wolfson has access to these files, while ignoring the fact that they are separate files maintained for distinct attorney-client relationships. This is not the law and there is no support for this overreaching position.

Indeed, 3M's insistence that Mr. Wolfson, as Clarcor's attorney, search and turn over responsive documents in his files is no different than if 3M made the same assertion vis-à-vis Quinn Emanuel, which serves as counsel to TransWeb and also to other clients that compete with 3M in the respirator and/or filtration markets. Quinn Emanuel maintains files for these other clients, some of which may contain documents responsive to some of the discovery requests made by 3M in this case. Surely there can be no legitimate argument that Quinn Emanuel is obligated to search such files in response to a document request directed to TransWeb simply because Quinn Emanuel has access to them. Yet this is precisely the position 3M is advocating with respect to Mr. Wolfson.

For the first time on reply, 3M adds substantial argument relating to "possession, custody or control," yet relies on inapposite cases and ignores the real issues underlying this dispute. Both *Camden Iron & Metal* and *Solvay Solexis* involved documents in the possession of a *foreign* parent company. *Camden Iron & Metal*, 138 F.R.D. at 440 (Japanese parent corporation);

---

[6]  Mr. Wolfson is general counsel for Baldwin Filters, Inc.; CLARCOR Air Filtration Products, Inc.; CLARCOR Consumer Products, Inc.; CLARCOR Filtration Products, Inc.; CLARCOR International, LLC; CLARCOR Total Filtration, Inc.; Clark Filter, Inc.; Facet USA LLC; J.L. Clark, Inc.; Keddeg Company;  Martin Kurz & Co., Inc.; Mexico Perry Equipment LLC; Perry Equipment Corporation; Perry International Holdings, LLC; Purolator Liquid Process, Inc.; Purolator EFP, LLC; Purolator Facet, Inc.; Scientific Process Solutions, Inc.; Total Filtration Services, Inc.; TPS, LLC; TransWeb LLC, and United Air Specialists, Inc.

**HIGHLY CONFIDENTIAL
- FILED UNDER SEAL**

*Solvay Solexis*, slip op. at 6 n.10 (Italian parent corporation).  Neither the rule nor the rationale of these cases applies here.

*Camden Iron & Metal* sets forth five situations in which the documents of a parent may be in the "control" of a subsidiary, not *one* of which is met here:

> [W]here the litigating corporation is the subsidiary and the parent possesses the records, courts have found control to exist on the following alternate grounds:
>
> (1) the alter ego doctrine which warranted "piercing the corporate veil";
>
> (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit;
>
> (3) The relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;
>
> (4) There is access to documents when the need arises in the ordinary course of business; and
>
> (5) subsidiary was marketer and servicer of parent's product . . . in the United States.

138 F.R.D. at 441-42. With respect to the first situation enunciated in *Camden Iron & Metal*, 3M does not (and cannot) allege that TransWeb is the alter ego of Clarcor.  With respect to the second and fifth situations, TransWeb was not even owned by Clarcor at the time it was first sued by 3M in Minnesota, or when it first sued 3M in this Court.  With respect to the third situation, TransWeb has not produced *any* Clarcor documents, "helpful for use in litigation" or otherwise.  Finally, 3M has failed to carry its burden of showing that TransWeb has "access to documents when the need arises in the ordinary course of business" from Clarcor, nor is it entirely clear what this means in the context of a parent holding company.

Moreover, there are significant public policy reasons for finding that documents in the hands of a foreign parent company are in the "possession, custody or control" of a domestic subsidiary that is essentially acting as the foreign parent's agent with respect to a particular transaction or incident at issue in litigation.  A litigant should not be able to ship off harmful documents to a foreign parent to shield them from discovery (absent time- and resource-consuming compliance with the Hague Convention and other international discovery complex procedures) while producing documents that support its case.  No such concerns are present here, however.

Honorable Patty Shwartz, U.S.M.J.                    **HIGHLY CONFIDENTIAL**
November 2, 2011                                     **- FILED UNDER SEAL**
Page 15

Unlike the parent companies in *Camden Iron & Metal* and *Solvay Solexis*, Clarcor is not a foreign entity. 3M had a full and complete opportunity to conduct discovery of TransWeb and third parties in this action. It subpoenaed multiple third parties, including TransWeb's customers and its customers' customers, for documents and depositions. It had every opportunity to subpoena Clarcor if it so desired. Moreover, during previous meet and confers, TransWeb's counsel made clear to 3M on multiple occasions that Clarcor was a separate corporate entity and that there was no basis for asserting an alter ego theory of liability against Clarcor. As such, 3M was on notice that if it wanted to obtain documents or information from Clarcor, it should serve a subpoena. It never did and should not be permitted now to use its failure to issue a subpoena on Clarcor to impose new burdens on TransWeb to search for and produce additional documents after the close of discovery, while the parties are proceeding at full speed to trial under the case schedule, including preparing supplemental privilege logs, expert reports and preparing for the November 14, 2011, *Markman* hearing.

Finally, 3M has attempted to use the meet and confer and joint letter process to strong-arm TransWeb into agreeing *not* to call Mr. Wolfson as a witness at trial. It is inappropriate for 3M to rely on TransWeb's refusal to accede to such unreasonable demands to argue that it is somehow entitled to third party discovery it failed to take.[7] TransWeb produced Mr. Wolfson, its General Counsel, voluntarily. That does not constitute a commitment to produce the documents of *all* of the third parties for which Mr. Wolfson is also General Counsel.

**(2)   3M Should Have Sought Documents "Reflecting Clarcor's Valuation of TransWeb" from Clarcor, Not TransWeb**

In its second argument, a subtle variation on its first, 3M argues that TransWeb "should produce all documents (both from Mr. Wolfson's files and elsewhere) reflecting Clarcor's valuation of TransWeb, either at the ▮▮▮▮▮▮▮▮▮▮ number or otherwise."

On its face, 3M's request seeks pre-acquisition documents belonging to Clarcor (not TransWeb) based on document requests served on TransWeb. To the extent Clarcor conducted valuations of TransWeb, 3M could have – and indeed, should have – sought such documents from Clarcor pursuant to a subpoena.

Nor is there any merit to 3M's accusation that TransWeb is trying to use the attorney-client privilege as a sword and a shield. The testimony 3M references—that Clarcor would have paid ▮▮▮▮▮▮▮▮▮ for TransWeb absent 3M's infringement litigation against it—relates to primarily business concerns. Throughout this litigation TransWeb has drawn a consistent line between Mr. Wolfson's dual business and legal functions and has repeatedly advised 3M

---

[7]   In any event, 3M is incorrect when it contends that Mr. Wolfson's testimony is the only evidence to support its allegation that TransWeb's principals were forced to sell it at a "fire-sale" price because of the 3M litigation. Rather, other fact witnesses, including Mr. Granville, as well as independent expert valuations of the business, will also support this allegation.

Honorable Patty Shwartz, U.S.M.J.                    **HIGHLY CONFIDENTIAL**
November 2, 2011                                     **- FILED UNDER SEAL**
Page 16

that it is not asserting attorney-client privilege over testimony or documents relating to *business* issues.

For example, counsel for TransWeb advised 3M's attorney at Mr. Wolfson's deposition that, with respect to Mr. Wolfson's testimony, "we don't have a problem with him testifying with respect to what he knows and does as a businessperson, but as long as you're not going to argue that that's a waiver as to privileged communications or legal issues, that's acceptable. . . . We're trying to find a way not to obstruct everything you might want to ask, basically, given that he is an attorney[.]"  Wolfson Tr. at 14:17-22, 15:13-16.  TransWeb's counsel instructed the witness consistently in the deposition.  *See, e.g., id.* at 53:15-20 ("You can talk about the business aspects you discussed with [TransWeb's Kumar Ogale]. . . . But to the extent there was legal analysis relating to the pending lawsuit, avoid that.").

In reply, 3M again argues (incorrectly) that TransWeb's refusal to accede to its belated requests for production of documents held by TransWeb's legally separate—and recent—parent corporation is somehow confirmation that TransWeb is asserting the attorney-client privilege as both a sword and shield.  There is still no merit to this argument.  TransWeb is simply refusing to undertake the extensive burden and expense required to review and redact an attorney's files for responsive, non-privileged information when 3M failed to properly request them prior to the close of discovery and when those files will be overwhelmingly privileged and/or not within the possession, custody or control of the subsidiary at all. Although TransWeb went to great lengths to meet 3M's post-discovery demands, TransWeb respectfully submits it should not be diverted from expert discovery and dispositive motion practice by onerous discovery imposed after the relevant cut-off.

Because 3M has failed to show under either of its arguments that 3M is entitled to Mr. Wolfson's or Clarcor's documents responsive to either of the requests at issue relating to Clarcor's acquisition of TransWeb, 3M's requests by joint letter should be denied.

*             *             *

The parties are available at the Court's convenience for either an in-person or telephonic conference to discuss these issues.

Respectfully submitted,

Gregory D. Miller

GDM
cc:      All Counsel of Record *(via Electronic Mail)*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOLVAY SOLEXIS, INC. | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **Civil Action No. 04-6162(FSH)** |
| | : | |
| | : | |
| 3M COMPANY, ET AL. | : **ORDER ON INFORMAL APPLICATION** |
| | : | |
| **Defendants** | : | |

This matter having come before the Court by way of joint letters, totaling 74 single spaced pages and more than fifty exhibits, that set forth the remaining discovery disputes between the parties; and the Court having reviewed the submissions; and the Court having considered the claims and defenses; and for the reasons set forth herein; and for good cause shown,

IT IS ON THIS 22nd day of February, 2006

ORDERED that, with respect to Plaintiff's Interrogatories Nos. 4 and 5, and Document Demands Nos. 1 and 2, no later than **February 28, 2006**, the defendants shall produce: (1) a certified response setting forth the conception and reduction to practice dates for the claims in the '627 Patent; (2) the nonprivileged documents that support its July 1995 reduction to practice date for claims 7-9 of the '536 patent and the claims in the '627 patent or provide a certified response that all documents in its possession, custody, or control, including the VNIISK records, have been produced;[1]

---

[1]The information concerning dates regarding conception and reduction to practice are relevant in patent infringement cases. It appears that only claims 7-9 of the '536 patent and the

1

IT IS FURTHER ORDERED that the defendant shall produce a Rule 30(b)(6) witness to testify on conception, reduction to practice and "diligence" in filing the patent application;[2]

IT IS FURTHER ORDERED that, with respect to Plaintiff's Document Requests Nos. 1, 2, 3, 12, 13, 27, 28, 61, 62, 64, 80, 81, 82, 83, 84, 85, and 86, no later than **March 3, 2006**: (1) the parties shall inspect the sample polymers exchanged between the defendant and VNIISK; (2) the defendant shall produce all research documents and correspondence between VNIISK and the defendant related to the patents in suit or produce a certification that all such documents have been produced; and (3) the defendant shall produce all agreements between the defendant, VNIISK and/or ANGLES or produce a certification that all such agreements have been produced;[3]

---

claims of the '627 patent are relevant. <u>See</u> Plaintiff's Supp. Response to Defendants' Rog. No. 1. As to the '627 patent, the Court notes that the defendants have identified the portions of notebooks addressing the reduction to practice but that does not mean it need not commit to a date.

[2]Given the fact the conception and reduction to practice dates come from several sources, such as Mr. Worm's notebooks and VNISK records, the Court finds that depositions explaining the factual basis for the dates and facts showing diligence is appropriate.

[3]The Court has already ordered the defendant to obtain the records from VNIISK concerning work performed on the patents at issue in this case. The plaintiff's now seek any "samples" of any monomer or polymer forwarded to 3M from Russia. The plaintiff argues that it needs access to these samples to prove the invalidity of the '627 patent. The defendant does not oppose making the samples available for inspection and the Court has set a deadline for the parties to complete such an inspection.

The plaintiff also seeks all research and correspondence between the defendant and VNIISK related to fluoroelastomers from 1991 to the present. The defendant do not oppose producing these documents and has represented that it will review the documents to ensure it has produced all research and correspondence concerning the patents at issue.

The plaintiff also asserts that there are agreements between the defendant and VNIISK that have not been produced and it needs access to all agreements to address claims of

2

IT IS FURTHER ORDERED that, with respect to Plaintiff's Document Demand No. 1

and 2 and Interrogatory No. 15, no later than **February 24, 2006**, the defendant shall produce a

certification that all non-privileged documents required by the January 6, 2006 Order, have been

produced;[4]

IT IS FURTHER ORDERED that, no later than **February 28, 2006**, the defendant shall

produce a certification from a person with knowledge that the redacted documents omit only

information that is unrelated to the subject matter of this law suit.[5]  If a witness can testify about

---

"nonownership".  The defendant has represented that it has produced all documents reflecting
agreements between the defendant, VNIISK and/or ANGLES that relate to the subject matter of
the patents in suit.  Thus, the Court will require that the defendant to produce a certification that
all such documents that still exist have been produced.


[4]By way of Order dated January 6, 2006, the Court directed the defendant to produce
research and testing documents mentioned in the patents in suit.  The plaintiff claim that the
defendant has failed to produced the research and testing documents underlying the patent
"examples" from the patents in suit.  The defendant has represented that it has produced
responsive documents that include the support for the examples in the patents and that each side
is equally capable of reviewing documents to identify information about the examples.  Based
upon this representation, other than producing the documents required by the January 6, 2006
Order, no further response is required.  Therefore, the defendant shall produce a certification
from a person with knowledge that all responsive, nonprivileged research and testing documents
required by the January 6, 2006 Order have been produced.

[5]The plaintiff states that pages from lab notebooks and other documents that are being
relied upon to establish the date of invention should not be redacted.  The Court ordered the
defendant to review all lab notebooks to certify that no relevant information was redacted and the
Court was advised that such a certification was produced.  The Court is now being asked to direct
the defendant to produce unredacted pages of memorandums and other nonnotebook documents
on which the defendant intends to rely as well as unredacted pages of any items used as
deposition exhibits.  The plaintiff never before requested a certification concerning the redaction
of non-notebook documents but, to ensure all relevant information has been produced, the Court
will require a review of all redacted documents by a person with knowledge and expertise to
ensure that only information that is not related to the subject matter of this litigation has been
redacted.  The plaintiff is entitled to information relevant to the claims and defenses and the
defendant has been directed to ensure that the broader category of information, namely

3

the contents of a document or authenticate the document only by referring to redacted portions of

the documents, then those portions of the document that enable the witness to authenticate the

document or testify about it shall be unredacted.[6]

IT IS FURTHER ORDERED that, with respect to Plaintiff's Document Demands Nos. 61

and 62, no further response is required;[7]

IT IS FURTHER ORDERED that, with respect to the Plaintiff's Second Rule 30(b)(6)

notice Topics Nos. 1-2, 4-10, 13, 15, 26-27, and 47, the topics shall be limited to matters related

---

information related to the subject matter of the litigation, has been disclosed. The fact a party chooses to use a redacted document as an exhibit does not mean the entire document becomes relevant, so long as it can be authenticated and a witness can testify about the portions of the document that were not redacted without reference to the redacted portions. If a witness needs to look at a redacted portion of the document to testify, then that portion of the document need to be unredacted. If, however, a witness can authenticate a document and testify about its contents without reference to the redacted portion and where such redacted portion does not relate to the subject matter of this litigation, there is no basis to require the defendant to unredact the entire document.

[6]The Court is concerned about the challenges the plaintiff claims it faced while trying to depose certain inventors using the redacted pages of the notebooks. The plaintiff cited to the deposition of George Moore, who stated that he was unable to respond to a question posed based upon a redacted document "without seeing the entire page." See Joint Letter at 27. The volume of exhibits before the Court did not include the actual deposition page, but the defendant did not dispute that the witness testified as quoted.

[7]The plaintiff is seeking production of documents concerning the LTFE6400x product as well as documents related to other low temperature fluoroelastomers and fluorcarbon polymers and monomers used in the polymerization of low temperature fluoroelastomers. The defendant has represented that the LTFE6400x product does not fall under the patent-in-suit and was not commercialized until after the filing of the patents-in-suit. The plaintiff has failed to show that information concerning this specific product or even other low temperature fluoroelastomers are relevant. To the extent the plaintiff seeks information concerning why the defendant chose not to commercialize the claimed inventions and chose to commercialize LTFE6400x, then it may ask about this topic at the defendant's Rule 30(b)(6) to help it determine the value of the patents in suit.

to the '536 and 627 patents.[8] No later than **February 24, 2006**, the plaintiff shall advise the defendant if Topics 4-6 seek more than information concerning the chain of ownership for the subject matter claimed in the patents in suit;

IT IS FURTHER ORDERED that, with respect to Topic No. 3, the Rule 30(b)(6) witness shall be prepared to provide only nonprivileged responses regarding the decision to have the Russian inventors sign assignments;

IT IS FURTHER ORDERED that, no later than **72 hours** before the deposition of the first of either Messrs. Hintzer or Schwertfer, the defendants shall produce the relevant pages of the laboratory notebooks or documents/notes of laboratory work that relate to the '536 patent or certify that either no such documents exist and/or all responsive documents have been produced;[9]

---

[8]The topics as drafted lacked any limitation as to the specific matters about which the Rule 30(b)(6) witness should be prepared to testify. The relevant topic for these witnesses concern matters related to the patents in suit. Thus, the limitation that the Court has imposed is proper in light of the claims and defenses. The fact that some of the information sought was also provided in Interrogatory responses does not render the deposition topic cumulative or inappropriate. Interrogatory responses frequently provide a road map for finding the source of information or facts that support a particular topic. Depositions enable a party to further probe the responses.

To the extent certain topics appear redundant of each other (i.e. Topic Nos. 4-6), the plaintiff shall explain to the defendant the differences between the topics to ensure that the defendant can properly prepare its Rule 30(b)(6) witness.

With respect to Topic No. 3, to the extent a decision to sign assignments related to the '627 patent is based on conversations with counsel, then such conversations are subject to claims of privilege. If the decision was also based on other factors, then a response to questions about the other reasons for the assignment is required.

[9]The plaintiff's demand casts too broad a net. Relevant information in this case concerns the patents in suit. Thus, there is no reason to collect all lab notebooks or even to disclose all of the lab notebooks of the two inventors of the '536 patent. The defendant represents that neither inventor has a laboratory notebook that refers to or relates to the worked they performed on the '536 patent and it shall produce a certification so reflecting.

IT IS FURTHER ORDERED that, with respect to the defendant's request for documents in the possession of Solvay Italy, the plaintiff shall produce: (1) any documents in the possession of Solvay Italy on which plaintiff intends to rely at trial, including but not limited to documents relating to the plaintiff's invalidity defense, and (2) documents in the possession of Mr. Tommasi, Mr. Navarrini, and Ms. Albano that relate to the Accused Product and/or the patents in suit;[10]

IT IS FURTHER ORDERED that, with respect to Defendant's Interrogatories Nos. 1 and

---

The Court notes that on page 40 of Plaintiff's 41 page single spaced letter received on February 17, 2006, the plaintiff stated that "it was imperative to have these documents by hand on February 21, 2006." Joint Letter at 40. The letter was received during the afternoon of Friday, February 17, 2006 and the next day the Court was open was Tuesday, February 21, 2006. While the Court promptly issued its ruling, it is unreasonable for the plaintiff to expect that the defendant would be able to produce documents in the possession of the German subsidiary within one business day of its request.

[10]The defendant demands that the plaintiff obtain documents in the possession of Solvay Italy or certain of its employees. The Court has been advised that Solvay Italy is the foreign parent corporation of the plaintiff, which is one of its subsidiaries. It appears that the subsidiary has control over at least some aspects of the foreign corporation and it is obliged to produce certain records. See Camden Iron & Metal v. Marubeni America Corp., 138 F.R.D. 438, 444 (D.N.J. 1991). The record shows that the plaintiff has had the ability to easily obtain support from the parent to pursue this litigation when it sees fit. For instance, the Court has already found that Mr. Tommasi has played a critical role in preparing witnesses to testify at depositions in this case. As the Court has already found that the plaintiff has control over Mr. Tommasi to produce him for a deposition, and it is clear plaintiff can obtain the documents in his files that are related to the patent in suit or the accused product. In addition, it appears that the plaintiff has produced certain documents in the possession of Mr. Navarrini, namely pages of his laboratory notebooks. The plaintiff cannot selectively produce documents from a person and then hide behind his employment by the foreign parent to avoid searching for and producing other documents that may be in his files that relate to the accused product or patent in suit. With respect to Ms. Albano, she has been identified as a person, together with Mr. Tommasi, involved in research and development of low temperature fluoroelastomers. See Deposition of Robert Grinwis, dated January 20, 2006, at 102 (attached as Exhibit 7 to the Joint Letter dated February 17, 2006). Thus, it his hard to imagine how her information would not be within the reach of the plaintiff. For this reason, her files should be reviewed for responsive materials.

6

2, the plaintiff shall supplement its response at the time it discloses its expert report;[11]

IT IS FURTHER ORDERED that, with respect to Defendant's Interrogatory No. 4, the plaintiff shall identify the claims that it contends are not present in the accused product. Each party's claims construction shall be disclosed in accordance with the deadlines set forth in the Amended Pretrial Scheduling Order:[12]

IT IS FURTHER ORDERED that, with respect to Defendant's Interrogatory No. 8, no later than **February 28, 2006,** the plaintiff shall provide the date when the product that they intended to import was first made and when the plaintiff planned to sell or offer the product for sale in the United States;[13]

IT IS FURTHER ORDERED that, with respect to Defendant's Interrogatories Nos. 11 and 12, the plaintiff shall disclose whether or not any of the inventors and/or representatives from VNIISK made statements about the patents or inventions in the presence of the plaintiff's representatives, who was present when such statements were made, and approximately when they were made. The defendant may depose the representative of the plaintiff about the statements

---

[11]Interrogatory Nos. 1 and 2 seek the factual basis for the contention that the patents are invalid. It appears that the responses set forth facts known to the plaintiff at this time and which will be supplemented based upon all of the fact discovery. It appears that the final supplementation should be provided when its expert report is disclosed as its expert will be disclosing all of the facts on which he/she considered to reach his/her conclusion regarding invalidity.

[12]The identification of the claims at issue in the '627 patent may narrow the scope of expert testimony and other discovery that the parties need to complete. There is no reason to think that the plaintiff, who has brought a declaratory judgment action concerning the patent, is unaware of the claims that it believes are not in its own product. The construction of these claims, however, is best left for another day.

[13]The information sought by Interrogatory No. 8 seek information about when the allegedly infringing activity occurred and hence seeks relevant information.

he/she make;[14]

IT IS FURTHER ORDERED that, with respect to Interrogatory No. 14, no later than

**February 28, 2006,** the plaintiff shall provide a supplemental response to this interrogatory;[15]

IT IS FURTHER ORDERED that, with respect to Interrogatory No. 18, no later than

**February 28, 2006,** the plaintiff shall provide a supplemental response to this interrogatory;[16]

IT IS FURTHER ORDERED that, with respect to Interrogatory No. 20, no later than

**February 28, 2006,** the plaintiff shall provide a supplemental response to this interrogatory;[17]

IT IS FURTHER ORDERED that, with respect to Rule 30(b)(6) Topic No. 11, no later

than **March 3, 2006,** the plaintiff shall provide written responses for the information sought by

---

[14]The interrogatory seeks a listing of conversations between the plaintiff or its attorneys and any of the named inventors of the patents in suit and/or the representatives of VIINSK. There is no attorney-client relationship between the plaintiff and the inventors or VNIISK and thus, privilege is not a basis to withhold a response to the interrogatory. Nonetheless, to the extent the defendant is looking for the fruits of plaintiff's counsel's conversations with these nonparties, disclosure of the results of these interviews may disclose work product. That said, if a representative of Solvey was present during such interviews, they can be asked what the inventors or representatives of VNIISK said in their presence.

The Court notes that the plaintiff indicates that similar discovery should be required from the defendant with respect to its communications with representatives of VNIISK. The Court has already ruled upon requests that the defendant obtain documents from VNIISK concerning the patents at issue. There is nothing before the Court to show plaintiff asked that the defendant identify the conversations that it has had with VNIISK and therefore, the Court will not direct the defendant to disclose these communications.

[15]According to the Joint Letter, the plaintiff has agreed to supplement its response to this Interrogatory.

[16]Id.

[17]Id.

8

Topic No. 11;[18]

IT IS FURTHER ORDERED that, with respect to Rule 30(b)(6) Topic Nos. 13 and 14,

the plaintiff shall produce a witness who can testify about statements that the inventors and

VNIISK made in the presence of representatives of the plaintiff concerning the patents in suit;[19]

IT IS FURTHER ORDERED that, with respect to Defendant's Document Demands No.

37, no later than **February 28, 2006,** the plaintiff shall produce a list of the patent applications

that it filed with the United States Patent and Trademark Office that cover the Accused Product

or products that the plaintiff contends covers features of the Accused Product;[20]

IT IS FURTHER ORDERED that, with respect to defendant's Document Demand No.

64, no later than **February 28, 2006,** the plaintiff shall advise the defendant of the date it can

produce one sample of each of the five products mentioned during the deposition of Mr. Grinwis

and listed in Ms. Albano's email;[21]

_____

[18]According to the Joint Letter, the plaintiff agreed to provide the information sought by Topic No. 11 by way of written response.

[19]See note 14.

[20]The way the plaintiff may have described a feature of its product may disclose the way it has construed claims embodied in the patent in suit. Therefore, its statements to the U.S. Patent and Trademark Office regarding the Accused Product or those with similar features are relevant. That said, the plaintiffs should not be required to produce all of the communications that would otherwise be publicly available. To facilitate the search and review of such records, however, the . Court is requiring the plaintiff to list the patent applications that it has filed that cover the Accused Products or its features.

[21]The defendant seeks three samples of each of the plaintiff's product from different manufacturing runs. The defendant has failed to explain why it is necessary to obtain samples of the same product from different manufacturing runs. One sample of each product that has been identified during the deposition of Mr. Grinwis is all that is necessary for the defendant to learn about the product that the plaintiff produces and to determine if it infringes the patents in suit.

IT IS FURTHER ORDERED that, with respect to Defendant's Document Demands Nos. 66 and 67, no later than **February 28, 2006,** the plaintiff shall produce any nonwork product documents that embody communications between the plaintiff (not counsel) and the inventors and/or representatives VNIISK concerning the patents in suit.  Any documents being held based upon work-product shall be set forth in a privilege log that meets the requirements of Local Civ. R. 37.1; and

IT IS FURTHER ORDERED that, with respect to Defendant's Document Demand No. 95, no later than **February 28, 2006,** the plaintiff shall produce documents for any of the products that it intends to rely upon to prove obviousness or produce a certification that indicates that it does not intend to rely on any of its products to prove obviousness.[22]

s/Patty Shwartz
**UNITED STATES MAGISTRATE JUDGE**

---

[22] The issue in this case is whether or not defendant's patents are valid and whether or not the plaintiff's product infringes the defendant's patent.  One way to challenge a patent is to show it was obvious.  If the plaintiff intends to rely on any of its products to prove obviousness, then they are required to produce the documents requested by this demand for such products.