<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRANSWEB, LLC, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 10-4413 (FSH) (PS) |
| v. | **OPINION & ORDER** |
| 3M INNOVATIVE PROPERTIES COMPANY and 3M COMPANY, | Date: July 13, 2012 |
| Defendants. | |

**<u>HOCHBERG, District Judge</u>:**

      This matter comes before the Court upon Defendants' objections to the Special Master's recommendations on the application of attorney-client privilege and the work product doctrine to certain documents that were subject to a discovery dispute between the parties. The Court has reviewed and considered the submissions of the parties.

**I. BACKGROUND**

      This is a declaratory judgment action concerning patents for fluorinated polymeric non-woven web material owned by 3M Innovative Properties Company and 3M Company ("3M"). After document production, the parties were unable to resolve disputes as to certain documents which 3M had withheld pursuant to the attorney-client privilege and/or the work product doctrine. On January 4, 2012, the Court appointed the Hon. Alfred M. Wolin to serve as Special Master pursuant to Federal Rule of Civil Procedure 53. TransWeb selected twenty exemplar documents for the Special Master to review. (Special Master Report at 1.) 3M reconsidered its

decision to withhold one of those documents. (*Id.*) It submitted the other nineteen documents to Judge Wolin for *in camera* review, along with multiple certifications from 3M employees. (*Id.* at 2.) Judge Wolin also held a hearing on February 26, 2012, and post-hearing briefs were submitted on March 16, 2012. (*Id.*)

On April 12, 2012, Judge Wolin issued his Report and Recommendation. The Report and Recommendation thoroughly reviewed each document and the relevant law, and concluded that six of the nineteen documents were not subject to the attorney-client privilege or work product doctrine and therefore must be produced. (*Id.* at 53.) On May 3, 2012, 3M filed its objections to the Report, contending that Judge Wolin erred in his conclusions as to two of the documents. On May 17, 2012, with leave of the Court, TransWeb responded.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 53 sets forth the standards for this Court to apply in its review of the Special Master's Report and Recommendation. The Court reviews the Special Master's conclusions of law and—unless the parties stipulate otherwise—findings of fact *de novo*. Fed. R. Civ. P. 53(f)(3) and (f)(4); *see, e.g., Wachtel v. Guardian Life Ins. Co.*, Nos. 01-4183, 03-1801, 2006 WL 1320031, at *3 (D.N.J. May 12, 2006). The Court may only set aside a Special Master's ruling on a procedural matter for abuse of discretion. Fed. R. Civ. P. 53(f)(5).

In the Third Circuit, "the applicability of a privilege is a factual question" and "determining the scope of a privilege is a question of law." *In re Bevill, Bresler, & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986).

## III. DISCUSSION

3M objects to the Special Master's conclusions as to two documents. First, regarding Document 253, a PowerPoint presentation prepared by outside litigation counsel concerning a

potential patent infringement suit, 3M contends the Special Master incorrectly found there had been a waiver of attorney-client privilege and that the work product doctrine did not apply. Second, regarding Document 266, a memorandum summarizing the conclusions in the Power Point document, 3M contends the Special Master incorrectly found the work product doctrine did not apply (although he did find that attorney-client privilege applied).

### A. DOCUMENT 253

#### 1. Work Product Doctrine

Work product protection exists when a document was prepared or obtained: "(1) in anticipation of litigation; and (2) primarily for the purpose of litigation." *In re Gabapentin Litig.*, 214 F.R.D. 178, 183-84 (D.N.J. 2003). The party asserting the protections bears the burden of "demonstrating that the documents at issue were 'prepared in anticipation of litigation.'" *Id.* at 183 (quoting *Conoco, Inc. v. U.S. Dept. of Justice,* 687 F.2d 724, 730 (3d Cir. 1982)). To meet the anticipation of litigation standard, the party must show more than a "remote prospect" or "likely chance of litigation." *Id.* (citations omitted). Generally, the party must demonstrate the "existence of an identifiable specific claim or impending litigation at the time the materials were prepared," and the Court looks to the motivating purpose behind the creation of the document. *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 473 (E.D. Pa. 2005) (citations omitted).

The Special Master concluded that Document 253 was not protected by the work product doctrine, finding that 3M had not carried its burden of demonstrating that litigation was impending. (Special Master Report at 35-36.) However, the documents and supporting certifications indicate 3M had taken multiple concrete steps toward litigation when the document was created. The document was prepared by an outside law firm retained to provide "pre-suit

analysis [of patent infringement] concerning another company." (Special Master Report at 31.) It identifies the potential defendant and analyzes the claims against that defendant. (Miller Decl. Ex. L.) It clearly lays out what the infringement arguments would be and anticipates invalidity defenses that would be raised. (*Id.*) It also identifies the next steps in preparing for litigation, including witness interviews and resolution of any jurisdictional issues. (*Id.*) Importantly, when it was prepared, 3M had put in place a document preservation notice in anticipation of litigation, which tends to support 3M's contention that its state of mind when it created the documents was that litigation was anticipated. (*See* Special Master Report at 35; 3M Br. at 2, 8.)

In reaching his conclusion, the Special Master relied in part on the fact that 3M had used phrases like "possible litigation" or "in contemplation of litigation" in its privilege log and attorney certifications, as opposed to "certain" or "anticipated" litigation. (Special Master Report at 34-35.) However, the case law supports the language in 3M's privilege logs. *See, e.g.*, *Haines v. Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) ("A party seeking the protection of the work product privilege must show that the materials were prepared in 'the course of preparation for possible litigation.'") (citing *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)); *Coastal States Gas Corp. v. Dept. of Energy*, 644 F.2d 969, 977 (3d Cir. 1981) ("The attorney work-product privilege has uniformly been limited to documents prepared in contemplation of litigation.").

TransWeb relies on *SmithKline Beecham* in opposing 3M's motion, noting that in that case the work product doctrine did not apply even though litigation was "likely." 232 F.R.D. at 473. That case is distinguishable, however, because there the Plaintiff contended that patent litigation was likely merely because its product "showed promise," although potential defendants and even infringement had not been identified. *Id.* at 484. Here, the document in question

4

identifies the accused infringer and its products and begins to set forth and analyze a specific legal strategy; in fact, 3M was already holding documents in anticipation of the litigation. (Miller Decl. Ex. L.)  Litigation was far more likely here than in the *SmithKline Beecham* case.

Having reviewed the facts surrounding the creation of Document 253, the Court finds that the work product doctrine does apply to that document because litigation was anticipated and that was the purpose of creating the document.  *Cf. In re Gabapentin*, 214 F.R.D. at 183-84.  The document has the indicia of work product.

### 2. Attorney-Client Privilege

Judge Wolin also determined that 3M had not met its burden for demonstrating the attorney-client privilege applied to the document, because 3M's counsel's certification indicated that he "shared the contents and analysis of that PowerPoint with 3M management."  (Special Master Report at 32.)  The attorney-client privilege is waived if the document is shared beyond those with a need to know, and "[g]eneral, group-wide descriptions such as 'management' do not allow for the court to assess whether the recipients require, or have the capacity to act upon, the information distributed."  *Smithkline Beecham Corp v. Apotex Corp.*, 193 F.R.D. 530, 538 (N.D. Ill. 2000); *see also Traficante v. Homeq Servicing Corp.*, No. 09-746, 2010 WL 3167435, at *1 (W.D. Pa. Aug. 10, 2010).  3M bears the burden of establishing every element of attorney-client privilege, including that the communication was made in confidence and the privilege has not been waived.  *Schwarz Pharma., Inc. v. Teva Pharma. USA, Inc.*, No. 01-4995, 2007 WL 2892744, *2 (D.N.J.) (Sept. 27, 2007).

In its objections to the Special Master's Report, 3M for the first time submitted a new declaration stating that only one employee in management, who needed to know about the potential litigation, was shown the document. "[T]he reviewing Court has the discretion to

consider additional facts or hear evidence itself if it is needed to make a de novo determination." *Net2Phone v. Ebay, Inc.*, No. 06-2469, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008); *see also* Fed. R. Civ. P. 53(f)(1).  However, the Court will decline to consider new evidence where it "would render the proceedings before the Special Master nothing more than a moot court exercise."  *Net2Phone*, 2008 WL 8183817, at *4-5.  3M contends the additional evidence is needed here because TransWeb did not raise the waiver argument until the hearing.  (3M Br. at 12.)  TransWeb responds that it only became aware of the potential waiver when the certification of 3M's counsel, which indicated that the document was shared with "management," was filed.  (TransWeb Br. at 6.)

In this case, the Court declines to consider the new certification for the following reason: 3M was on notice of the potential waiver as soon as it submitted the certification that referred vaguely to "management."  Contrary to 3M's contention that TransWeb raised waiver at the last minute, 3M in fact made statements suggesting non-confidentiality on which TransWeb relied at the hearing.  3M therefore simply failed to carry its burden as to attorney-client privilege in the first instance, *see Smithkline Beecham*, 193 F.R.D. at 538, and is not entitled to introduce new evidence at this stage of the proceeding because TransWeb would be prejudiced if the Court considered the new certification.  At the hearing, TransWeb waived its right to cross-examine that in-house attorney on the express understanding that 3M would not be submitting additional evidence.  (TransWeb Br. at 5.)  The new certification could not be considered without reopening the hearing to permit full cross-examination, and there has been no showing of excusable neglect by 3M sufficient to warrant such untimely action, particularly when this Court has found that the same document is entitled to work product protection.

The Court therefore will adopt the Special Master's finding that Document 253 is not subject to the attorney-client privilege.

### B. DOCUMENT 266

3M contends that Document 266, which is related to Document 253, is similarly protected work product, contrary to the Special Master's findings. However, Judge Wolin did find that document was protected by attorney-client privilege and that there was no waiver. (Special Master Report at 36.) 3M does not explain why the Court needs to reach the issue of work product protection for the document. Because 3M does not have to produce the document, the issue is "academic," as TransWeb contends. (TransWeb Br. at 12.) The Court therefore will adopt the Special Master's recommendation concerning Document 266, and 3M need not produce it.

### IV. CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 13th day of July, 2012,

**ORDERED** that the Court hereby adopts the Special Master's Report and Recommendation, as modified by this Opinion.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.